UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVON RAYMOND DAVIS,

        Petitioner,

v.                                                                       Case Number: 09-cv-11254
                                                                       Honorable Gerald E. Rosen

JEFFREY WOODS,

        Respondent.
_____/

## OPINION AND ORDER
### (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
### (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*, AND
### (3) DENYING MOTIONS TO AMEND THE RECORD, FOR SUMMARY JUDGMENT,
### AND FOR REPLY ANSWER AS MOOT

Petitioner Lavon Raymond Davis, a state inmate currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241-2243, alleging that he is being held in violation of his constitutional rights. On January 26, 1987, Petitioner was bound over on charges of first-degree murder, MICH.COMP.LAWS § 750.316, and felony firearm, MICH.COMP.LAWS § 750.227b. On September 3, 1987, he was convicted of those charges by an Oakland County, Michigan, circuit court jury. A defense motion for a mistrial was granted on October 26, 1987. Subsequently, Petitioner waived his right to a jury trial. On February 11, 1988, following a bench trial, he was convicted of aiding and abetting the crimes of second-degree murder and felony firearm. Petitioner then pleaded guilty to being a habitual offender-second offense, MICH.COMP.LAWS § 769.10. On March 11, 1988, he was sentenced to life in prison as a second-offense habitual offender plus the mandatory two years in prison for the felony-firearm conviction.

In his *pro se* petition, Petitioner challenges the denial of his parole grievance which challenged his life sentence as a second-offense habitual offender. Respondent filed his answer to the petition on October 12, 2009. The required Rule 5 materials were filed on October 19, 2009. Petitioner also filed several motions: (1) "Motion to Amend the Record" [dkt. # 8], (2) "Motion For Summary Judgment" [dkt. # 12], and (3) "Motion for Reply Answer" [dkt. # 13].

For the reasons stated below, the Court will deny the petition. Because the Court is denying Petitioner's habeas petition, the Court will deny Petitioner's above-stated motions as moot. The Court also declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

I.

This case arises from the shooting death of James Matthew Craft on January 18, 1986. Craft was shot in the heart with a .25 caliber handgun by Robert Carter. Carter pleaded guilty to second-degree murder. Petitioner was present at the time of the shooting; he was charged eleven months later with first-degree murder and felony firearm.

At trial, Sharon Bailey, one of Craft's friends, testified that he came over to her house on the day in question. She said Carter and Petitioner were present when he arrived. According to Bailey, Carter and Petitioner had been talking about "[getting] some money." (Trial Tr. 25, Feb. 8, 1988.) Bailey testified that, prior to the murder, Carter and Petitioner had repeatedly referred to the victim as a "fag" or a "faggot." She also said that they had a gun; Bailey testified that she heard them talking about the gun, saying it was a slick little .25 automatic. She said Craft left but later returned. Bailey testified that Carter and Petitioner told her to invite the victim to her house so they could "fuck him up and rob him," referring to Craft. (Trial Tr. 30, Feb. 8, 1988.)

According to Bailey, in the interim, a man named Joe Price came over to her house. She said that he got into an argument with Carter. Bailey testified that, when Carter pulled out a gun, Petitioner intervened, grabbing the gun away from Carter and saying that Carter was not going to do anything because it was his gun. Bailey said Petitioner then put the gun in his waistband. (Trial Tr. 31-33, Feb. 8, 1988.) She said it was the last time she saw the gun.

Geraldine Craft, the victim's sister testified that she saw her brother in the company of Carter, and another man, just before the shooting. According to Ms. Craft, they stopped by her house briefly and then left. She said she saw her brother about ten or fifteen minutes later, when an individual by the name of Harvey Bumpous drove her brother's car up to her house. Ms. Craft testified that he beeped the horn and yelled to her that her brother had been shot. She said she got into the car and saw her brother in the passenger seat, leaning over. Ms. Craft said they then drove him to the hospital. She testified that her brother died three days later.

It was stipulated by both counsel that Craft died as a result of a gunshot wound to the chest. He was pronounced dead at 1:03 a.m., on January 21, 1986. A doctor removed an empty shell case from his clothing. It was also stipulated that Petitioner was with Carter a short time before the shooting of Craft, that the gun had been discharged at that time, and that a spent casing had been recovered.

Bruce MacKenzie, a firearm and tool marker examiner from the Michigan State Police Crime Lab, testified that he was able to determine that the casing removed from the victim's clothes matched the one recovered from the earlier shooting. He also testified that the gunshot that killed Craft occurred at a close distance, probably a contact discharge.

The medical examiner, William G. Brooks, M.D., testified to the following: he said that the projectile entered the victim's body through the chest, passed through the pericardial sac and the right atrium of the heart, clipped the vena cava, and lodged in the dura of the spinal cord. He said that there were no apparent signs of a struggle.

Petitioner gave a statement to Detective Susan Brown-Smith, the officer in charge of the case. Petitioner waived his *Miranda*[1] rights. He told Detective Brown-Smith that, on the day in question, he was a passenger in the back seat of Craft's car. He said he saw Carter shoot Craft. Petitioner told her that he was scared, so he jumped out of the car. Detective Brown-Smith further testified that the victim's wallet was found on the front seat of the car; there was no money inside the wallet.

The prosecution then stipulated that Carter pleaded guilty to second-degree murder; Carter had done the actual shooting.

William Myers, an inmate in the Oakland County jail, testified that he had shared a cell with Petitioner. He said that Petitioner admitted to him that he assisted Carter in the shooting, by providing the gun and holding Craft while Carter shot him. Petitioner told Myers that they then went through Craft's pockets. Petitioner also told him that Carter had disposed of the gun. Myers also testified that Petitioner asked him to get Bailey to testify favorably; Myers was Bailey's boyfriend at the time.

The transcribed testimony of the convicted felons, John Grooms and Larry Johnson, who testified in the initial jury trial, was read into the record by the trial court. Deputy Susan Penny testified in rebuttal that when she was bringing Johnson back to the holding cell and taking Grooms

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

to the courtroom to testify, Grooms asked Johnson, "Is it the same way we talked about it?" She said that Johnson responded, "Yes." (Trial Tr. 154-55, Feb 9, 1988.)

Petitioner testified that he had seen the gun before but did not bring it to Bailey's house. He said he took the gun away from Carter during the argument with Joe Price but later gave it back. He testified that he and Carter joked about Craft being a "fag" but he denied that they planned to rob him. (Trial Tr. 160-61, Feb. 9, 1988.) According to his testimony, while they were riding in Craft's car, Carter and Craft "got to swinging" at each other. (Trial Tr. 162-63, Feb. 9, 1988.) He said Carter then pulled out the gun and shot Craft. He said he then jumped out of the car. According to Petitioner, he did not know that Carter planned to shoot Craft.

Petitioner further testified that he knew Myers but he denied telling him about the shooting. He also admitted being with Carter earlier in the day when Carter shot someone during an armed robbery. Petitioner testified that he did not go to the police because he was scared.

The trial court found Petitioner guilty of aiding and abetting the crimes of second-degree murder and felony firearm. Petitioner was sentenced, as a habitual offender, second offense, to life in prison, plus the mandatory two years for the felony-firearm conviction. Petitioner subsequently filed a motion for a new trial, which was denied.

Petitioner then filed an appeal of right in the Michigan Court of Appeals, raising the following five claims:

  I. [Petitioner's] conviction of second-degree murder was against the great weight of the evidence.

  II. [Petitioner's] conviction for possession of a firearm [during the] the commission of a felony was against the great weight of the evidence.

  III. The trial court failed to make suffiicent findings of fact on the crime of

>   aiding and abetting the possession of a firearm [during the] the commission of a felony.
> 
> IV. [Petitioner] was denied fundamental due process and his right to a speedy trial because the prosecution waited too long to charge him in this case.
> 
> V. The Oakland County prosecutor's arbitrary policy/actions in charging all repeat offenders as habitual offenders at the time they are charged with a new felony or attempted felony constitutes an abuse of discretion, denies [Petitioner] fundamental fairness, due process and equal protection of the law.

The Court of Appeals affirmed Petitioner's conviction for second-degree murder but remanded the case to the trial court for further findings of fact regarding the felony-firearm conviction; "we remand the case for further findings on the firearm charge." *People v. Davis*, No. 125430, at *2 (Mich.Ct.App. Mar. 24, 1992). The Court of Appeals found that there was sufficient evidence from which the trial court could conclude that Petitioner aided and abetted in regard to the gun, but wanted the trial court to articulate the facts and the law on the record. *Id.* On May 21, 1991, the trial court issued its opinion setting forth its findings, in compliance with the Court of Appeals' order.

Petitioner then filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. On August 31, 1992, the Michigan Supreme Court denied the application. *People v. Davis*, 440 Mich. 901, 488 N.W.2d 777 (1992).

On October 31, 2008, Petitioner claims to have filed a step grievance regarding his Judgment of Sentence commitment with the Michigan Parole Board. His filings were returned to him, rejected for the reason that he raised issues not within the authority of the Michigan Department of Corrections to resolve.

Petitioner filed his habeas petition on April 3, 2009. The petition was signed on March 30,

2009. Petitioner asserts the following:

> I.   Petitioner is restrained from his liberty by MDOC imprisonment and the parole board's determination of his sentence, where he was vacated from his (life sentence) and executed unconstitutionally upon a 2nd habitual status of a life sentence instead, which is limited only to seven and a half years, render Petitioner immediate release under his custody of execution, after serving 19 years.

In essence, Petitioner is challenging the denial of his parole grievance challenging his life sentence as a second habitual offender. The Michigan Department of Corrections denied his grievance stating:

> The prisoner is grieving the jurisdiction of the sentencing court in his current sentence. It is suggested the prisoner petition the sentencing court (6th Judicial Circuit) concerning his issue.
>
> PD 03.02.130 states, "Grievances that raise the following non-grievable issues also shall be rejected: Issues not within the authority of the Department to resolve."
>
> Grievance rejected.

(MDOC Grievance Response, Nov. 13, 2008).

Petitioner appealed that first-step grievance rejection to the Warden's office as required by the Department of Corrections' procedure. The Warden denied the grievance because Petitioner's sentencing claim was not within the jurisdiction of the Department to resolve. (MDOC Response to Grievance, Dec. 18, 2008).

II.

State prisoners ordinarily must exhaust available remedies in state court before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement applies to 2241 petitions challenging the execution of a sentence, even though that statute does not mandate exhaustion by its own terms. *Fazzini v. Northeast Ohio Corr.*

*Center*, 473 F.3d 229, 231 (6th Cir. 2006).  Although Petitioner apparently did not raise his claim in state court, it is clear that a state prisoner's right to appeal parole decisions has been eliminated. *See* Mich. Comp. Laws § 791.234(11); *Morales v. Mich. Parole Bd.*, 260 Mich.App. 29, 35-42, 676 N.W.2d 221, 226-30 (2003).  The Court therefore deems Petitioner's claim exhausted because there "is an absence of available State corrective process."  28 U.S.C. 2254(b)(1)(B)(i).

Petitioner is proceeding under section 2241, which permits a district court to grant a writ of habeas corpus if a petitioner establishes that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  However, when a petitioner challenges his "custody pursuant to a state court judgment," then the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (effective April 24, 1996) apply, regardless of how the petitioner characterizes his petition. *Rittenberry v. Morgan*, 468 F.3d 331, 333 (6th Cir. 2006); *see also Bies v. Bagley*, 519 F.3d 324, 330 n. 3 (6th Cir. 2008) (noting that § 2241 has a "less restrictive" standard than § 2254).  The AEDPA "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d). When, as here, no state court has evaluated a habeas petitioner's federal claims on the merits, the deference due under § 2254(d) does not apply, and habeas review of the claims is *de novo*, regardless of whether the petitioner proceeds under § 2254 or § 2241. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins*, 539 U.S. at 534). However, in this case, Petitioner has not established any constitutional violation, no matter what standard is applied to his claim.

### III.

### A.

Federal habeas relief is available "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination on parole matters, does not create a constitutionally protected entitlement or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Moreover, it is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998). Accordingly, to the extent that Petitioner asserts a violation of Michigan law, he is not entitled to habeas relief.

The Fourteenth Amendment to the United States Constitution provides, in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As the United States Supreme Court has explained, the Fourteenth Amendment

protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The Supreme Court has definitively held that there is no right under the United States Constitution of a lawfully convicted person to be conditionally released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Simply stated, there is no federal constitutional right to parole. *See Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990).

Moreover, the writ cannot be used to invoke judicial determination of questions which do not affect the lawfulness of the custody and detention, and the decision of which would not result in the release of the applicant from custody. *Hart v. Ohio Bureau of Probation & Parole*, 290 F.2d 550, 551 (6th Cir. 1961) (citations omitted). The Parole Board's resolution of Petitioner's grievance has nothing to do with the lawfulness of his detention. Nor does his underlying dispute with the Parole Board determination regarding his grievance affect the constitutionality of his detention.

Furthermore, Petitioner states that he is not appealing his conviction or sentence, but rather, he is appealing the execution of his confinement and sentence; "Petitioner here Mr. Davis is not appealing his conviction or sentence, but the facts of his confinement and sentence is executed unlawfully, and Petitioner has no other cognizable . . . ." (Petitioner's Petition, ¶ 11.)

Against that backdrop, the Court denies Petitioner's habeas petition. As a result, Petitioner's motions are denied as moot.

B.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed.R.App. P. 22(b). A certificate of appealability may

10

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

In this case, the Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability. The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall*, 156 F.Supp.2d 791, 798 (E.D.Mich.2001).

IV.

Accordingly,

11

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability and leave to proceed in forma pauperis on appeal.

**IT IS FURTHER ORDERED** that Petitioner's (1) "Motion to Amend the Record" [dkt. # 8], (2) "Motion For Summary Judgment" [dkt. # 12], and (3) "Motion for Reply Answer" [dkt. # 13] are **DENIED** as moot.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: January 29, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on         February 1, 2010        , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                         Debra M. Gagliardi                                     , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:
   Lavon Davis, #166014, Kinross Correctional Facility; 16770 S. Watertower Drive; Kincheloe, MI 49788                                       .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(313) 234-5137